NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

————————————————————

)
WALTER HRYNYK,                              )
                                           )
            Plaintiff,                     )
                                           )        Civil Action No. 05-1967 (GEB)
      v.                                    )
                                           )        MEMORANDUM OPINION
OFFICER JOSEPH GRECO, OFFICER              )
JOHN ISABELLA, READINGTON                  )
TOWNSHIP,  READINGTON TOWNSHIP             )
POLICE DEPARTMENT, JOHN DOES 1-10,         )
                                           )
            Defendants.                    )
————————————————————)

**BROWN, Chief Judge**

        This matter comes before the Court upon the Motion for Summary Judgment of

Defendants Officer Joseph Greco, Officer John Isabella, Readington Township, Readington

Township Police Department and John Does 1-10 (collectively, "Defendants").  The Court has

decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78.  For

the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment.

**I.      BACKGROUND**

        This case arises out of the April 14, 2003 arrest of plaintiff Walter Hrynyk ("Plaintiff" or

"Hrynyk").  On that day, Mr. Hrynyk had a disagreement with his neighbor, Alan Ash, regarding

the use of a driveway allegedly owned by Mr. Ash.  Def. Br. at 1.  Shortly after the

disagreement, Mr. Ash called the Readington Township Police Department.  *Id.*; Pl. Opp'n Br. at

1.  Officer Joseph Greco was first to arrive at the scene.  Pl. Opp'n Br. at 1; Def. Br. at 1.  Mr.

Ash allegedly described the dispute to Officer Greco, presenting the officer with a survey of the

property at issue.  Def. Br. at 1; Pl. Opp'n Br. at 1.  Mr. Ash was given the opportunity to file a criminal complaint against Mr. Hrynyk, but declined to do so, requesting instead that Officer Greco discuss the driveway dispute with Mr. Hrynyk.  Def. Br. at 1; Pl. Opp'n Br. at 2; Pl. Amended R. 56.1 Statement ¶ 9.  Mr. Ash told Officer Greco that Mr. Hrynyk was "very intoxicated" and that he had heard Mr. Hrynyk "shoot at houses" in the past.  Def. R. 56.1 Statement ¶ 10; Pl. Amended R. 56.1 Statement ¶ 10;  Def. Br. at 1.  On the basis of this information, Officer Greco requested backup from Sergeant Insabella.  Def. R. 56.1 Statement ¶ 10; Pl. Amended R. 56.1 Statement ¶ 10; Def. Br. at 1; Pl. Opp'n Br.   at 2.

Upon arrival of Sergeant Insabella, both officers (the "Officers") were led by one or both of Mr. Hrynyk's parents to Mr. Hrynyk's trailer, located on their property.  Def. Br. at 1; Def. R. 56.1 Statement ¶ 11; Pl. Opp'n Br. at 2; Pl. Amended R. 56.1 Statement ¶ 11.  Mr. Hrynyk, awoken by the arrival of the officers, stepped out on to the porch of his trailer.  Pl. Opp'n Br. at 2.  The officers noted that a number of tools, including an axe and a sledgehammer, were scattered on the ground in front of the trailer.  Def. Br. at 1; Pl. Amended R. 56.1 Statement ¶ 12; Def. R. 56.1 Statement ¶ 12. At the officers' request, Mr. Hrynyk stepped down from the porch. Pl. Amended R. 56.1 Statement ¶ 12; Pl. Opp'n Br. at 2.  Mr. Hrynyk alleges that he was then subjected to a pat-down frisk by the officers.  Pl. Opp'n Br. at 2.  The officers asked Mr. Hrynyk to remove his hands from his pockets and keep them in plain view, Def. Br. at 1; Pl. Opp'n Br. at 2; Pl. Amended R. 56.1 Statement ¶ 12; Def. R. 56.1 Statement ¶ 12.  While Mr. Hrynyk may have initially complied with this order, he promptly returned his hands to his pockets.  Def. R. 56.1 Statement ¶ 13, Pl. Amended R. 56.1 Statement ¶ 13; Pl. Opp'n Br. at 2; Def. Br. at 1.

2

When Officer Greco threatened to arrest him, Mr. Hrynyk walked away from the officers. Pl. Amended R. 56.1 Statement ¶ 15; Def. R. 56.1 Statement ¶ 15; Def. Br. at 1; Pl. Opp'n Br. at 2. The officers then "grabbed" Mr. Hrynyk from behind and forced him to the ground, before arresting him. Pl. Amended R. 56.1 Statement ¶¶16-18, Def. R. 56.1 ¶¶ 16-18, Def. Br. at 1, Pl. Opp'n Br. at 2. Mr. Hrynyk claims to have suffered significant injuries as a result of the officers' physical arrest. Pl. Opp'n Br. at 3; Def. R. 56.1 Statement ¶ 17; Pl. Amended R. 56.1 Statement ¶ 17. Finally, Mr. Hrynyk claims that upon arrival at the police station "Officer Insabella called Hrynyk trailer-trash, and Officer Greco called him and his family a bunch of idiot farmers." Pl. Opp'n Br. at 3.

On April 14, 2005, Plaintiff filed a Complaint against Defendants claiming damages (i) under 42 U.S.C. § 1983, for alleged violations of his rights under the United States Constitution, (ii) for Assault and Battery, (iii) for False Arrest and Illegal Imprisonment, and (iv) for alleged violations of his rights under the New Jersey Constitution. *See* Compl. On June 19, 2006, Defendants filed a motion for summary judgment.

## II.   DISCUSSION

### A.   Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

3

(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

    **B.**    **Application**

        **1.**    **Summary Judgment on Plaintiff's 42 U.S.C. § 1983 Claims.**

        Defendants argue that they are entitled to summary judgment that Mr. Hrynyk's rights under the United States Constitution were not violated by the Officers, and that his 42 U.S.C. § 1983 claim predicated on the alleged constitutional violations is therefore invalid.  This Court agrees.

        Section 1983 provides, in part, that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  In essence, "[s]ection 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn. v. Gabbert*, 526 U.S. 286, 290 (1999).

>   a.   Whether it was proper for the Officers to enter upon Mr. Hrynyk's front lawn.

Defendants request summary judgment that plaintiff may not predicate his section 1983 action on an alleged improper entry upon Mr. Hrynyk's lawn, as the entry did not violate Mr. Hrynyk's constitutional rights. This Court will grant Defendants' motion as to that issue.

"The Fourth Amendment recognizes the right of the people to be secure in their persons, houses**,** papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause." *Thomas v. Indep. Twp*., 463 F.3d 285, 296 (3d Cir. 2006) (quotations omitted), *quoting* U.S. CONST. amend. IV. "The Supreme Court has read the Amendment's twin commands in tandem, holding that when people have a reasonable expectation of privacy in their persons or effects, all searches and seizures must be supported by a warrant, unless they fall into one of the exceptions to that requirement." *United States v. Hartwell*, 436 F.3d 174, 177 (3d Cir. 2006), *cert. denied*, 75 U.S.L.W. 3175 (U.S. Oct. 2, 2006) (No. 05-11317).

The Fourth Amendment protection is not limited to the confines of the house, and is often interpreted to extend to the curtilage of the house. "[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Dunn,* 480 U.S. 294, 300 (1987). Thus, the "central component of the inquiry is whether the area harbors "intimate activity associated with the sanctity of a man's home and the privacies of life."" *United States v. Acosta*, 965 F.2d 1248, 1255 (3d Cir. 1992), *quoting Boyd v. United States*, 116 U.S. 616 (1886). "[F]our factors [are] relevant to the curtilage inquiry: [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the

5

home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by." *Acosta*, 965 F.2d at 1255, *quoting United States v. Dunn*, 480 U.S. 294, 301 (1987).

The Court does not need to reach Mr. Hrynyk's contention that he had a reasonable expectation of privacy with respect to the expanse of lawn in front of the trailer. Indeed, "[i]t is well-settled that the Fourth Amendment is not violated where a warrantless search is conducted pursuant to consent**.**" *Meister v. Commissioner of Internal Revenue*, 504 F.2d 505, 510 (3d Cir. 1974) (quotations omitted), *cert. denied*, 421 U.S. 964 (U.S. May 12, 1975) (No. 74-1014), *quoting Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *see also La v. Hayducka*, 269 F. Supp. 2d 566 (D.N.J. 2003) (finding no Fourth Amendment violations when parent of suspect guided police into parent's house to talk to suspect).

In the case at bar, it is undisputed that the property on which Mr. Hrynyk's trailer is located belongs to Mr. Hrynyk's parents. It is also uncontested that Officers Greco and Insabella were led to Mr. Hrynyk's trailer by Mr. Hrynyk's parents. The Court therefore finds that, even viewing all evidence in the light most favorable to the non-movant, there is no genuine issue of material fact that the officers entered the expanse of lawn in front of Mr. Hrynyk's trailer with the consent of the owner of the property. The officers' entry thus did not violate Mr. Hrynyk's constitutional rights. The Court will therefore grant Defendants' Motion for Summary Judgment on that issue.

> **b.    Whether it was proper to subject Mr. Hrynyk to a pat-down search.**

It appears that Plaintiff may seek to predicate his section 1983 claim on the grounds that Officers Insabella and Greco violated his Fourth Amendment rights by subjecting him to a pat-

down in front of his trailer.  Defendants argue that they are entitled to summary judgment that the Officers' actions did not violate Mr. Hrynyk's rights under the United States Constitution. This Court agrees.

"In *Terry v. Ohio*, 392 U.S. 1(1968), [the Supreme Court] held that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry,* 392 U.S. at 30). "One of the permissible purposes of such a search is the protection of the police officer. Consequently, a police officer may make a limited protective search for concealed weapons in circumstances where he or she has reason to believe that the suspect is armed or otherwise dangerous."  *United States v. Hall*, No. 05-2486, 2006 U.S. App. LEXIS 18250, at *7 (3d Cir. July 19, 2006), *citing Terry,* 392 U.S. at 24, 30. "In allowing for this exception to the warrant requirement, the *Terry* Court was careful to note that the exception is "narrowly drawn."" *Hall*, at *7, *quoting Terry*, 392 U.S. at 27.  In order for such a search to be justified, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Hall*, at *8, *quoting Terry,* at 21.

In the case at bar, Defendants Insabella and Greco approached Mr. Hrynyk armed only with the information that he was, in the words of his neighbor, "very intoxicated," and that he had a propensity for "shooting at houses." In addition, it is uncontested that the lawn in front of Mr. Hrynyk's trailer was strewn with tools, some of which could have been used as potential weapons.  The police officers could therefore have drawn the reasonable inference that Mr. Hrynyk was armed and dangerous.

Viewing all evidence in the light most favorable to non-movants, the Court finds that there is no genuine issue of material fact that the pat-down to which Officers Greco and Insabella subjected Mr. Hrynyk did not violate his constitutional rights under the Fourth Amendment.  The Court will therefore grant Defendants' motion for summary judgment on that issue.

### c.   Whether Mr. Hrynyk's arrest was proper.

Defendants argue that they are entitled to summary judgment that the Officers' arrest of Mr. Hrynyk was proper, and that Mr. Hyrnyk should therefore not be allowed to predicate his section 1983 claims on the grounds that the arrest violated his Fourth Amendment rights.  This Court agrees.

"Under the principles of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Okpor v. Rutgers*, No. 05-5301, 2006 U.S. App. LEXIS 23564 , at *5 (3d Cir. Sep. 15, 2006) (quotations omitted), *quoting Allen v. McCurry*, 449 U.S. 90, 96 (1980). "In the case where a federal action follows a state action, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Okpor*, at *5-6, *quoting* 28 U.S.C. § 1738.

New Jersey courts will give such preclusive effect to a state court judgment addressing an issue when:

> the party asserting the bar . . . show[s] that: (1) the issue to be
> precluded is identical to the issue decided in the prior proceeding;
> (2) the issue was actually litigated in the prior proceeding; (3) the
> court in the prior proceeding issued a final judgment on the merits;

> (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Hennessey v. Winslow Twp.*, 183 N.J. 593, 599 (N.J. 2005) (citations omitted).

In the case at bar, it is uncontested that Mr. Hrynyk pled guilty to a charge of obstruction of justice in connection with his actions on the night of April 14, 2003.  Def. R. 56.1 Statement ¶ 1; Pl. Amended R. 56.1 Statement ¶ 1. The court focused on the issue of Mr. Hrynyk's obstruction of justice, and issued a final judgment on the merits.  In fact, Mr. Hrynyk himself testified during his plea hearing as follows:

> Q. According to the complaint that was filed it says that on April 14th of this year in Readington Township you obstructed the administration of justice by refusing to keep your hands in view and trying to walk away from the police after they ordered you to stand still.  Did those things happen?
> A. Yes.

Def. R. 56.1 Statement ¶ 23.

"A warrantless arrest is '"reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."'" *United States v. William*, No. 05-1256, 2006 U.S. App. LEXIS 26575, at *5 (3d. Cir. Oct. 24, 2006), *quoting Wright v. Philadelphia*, 409 F.3d 595, 601 (3d Cir. 2005).  The fact that Mr. Hrynyk's actions that night amounted to an obstruction of justice – giving the officers probable cause to arrest him – would therefore be recognized as res judicata in any state court of New Jersey, and under 28 U.S.C. § 1738, would be so recognized by any federal court.  Thus, Mr. Hrynyk cannot claim that his arrest was improper.

9

Viewing all evidence in the light most favorable to the non-movant, the Court finds that Mr. Hrynyk's arrest by Officers Insabella and Greco did not violate his constitutional rights. The Court will therefore grant Defendants' motion for summary judgment on the issue.

> **d.    Whether the Officers used excessive force in arresting Mr. Hrynyk.**

Defendants seek summary judgment on plaintiff's section 1983 claim that the officers violated his Fourth Amendment rights by using improperly excessive force in arresting him. This Court will grant the motion.

"Where . . . [an] excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against *unreasonable* . . . seizures" of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (emphasis added). "A"seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen."" *Id*. at 395, n.10, *quoting Terry*, at 19, n.16. As for the test of reasonableness, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, at 396, *citing Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).

"The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, at 396, *citing Terry v. Ohio,* at 20-22. "The calculus of reasonableness must embody allowance for

the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham*, at 396-97.

Officers Insabella and Greco were faced with an individual they understood to be very intoxicated and whom they were told had a history of "shooting at houses."  Mr. Hrynyk disobeyed their orders to keep his hands in clear view, in spite of the officers' warning that any such disobedience would lead to Mr. Hrynyk's arrest.  In addition, Mr. Hrynyk refused to comply with the officers' request that he remain immobile, choosing instead to walk away from the officers in a yard littered with potential weapons.  Under those circumstances, the officers' decision to subdue Mr. Hrynyk by pulling him to the ground and handcuffing him seems eminently reasonable to the Court.[1]

In light of the foregoing, this Court finds that there is no genuine issue of material fact that the Officers used reasonable force in arresting Mr. Hrynyk.  The Court will therefore grant Defendants' motion for summary judgment on the issue.

---

[1] The Court notes that Mr. Hrynyk offers no medical evidence that would convincingly establish that he suffered any injuries as a result of the Officers' actions.  Pl. Amended R. 56.1 Statement ¶¶ 32-33.  In fact, Defendants highlight the fact that "[a]n April 30, 2003 CT scan of plaintiff's head revealed no fracture defects on the axial bone windows," and that "[n]o changes were noted in comparison with a prior CT scan of November 2, 2001," months before the incident at issue here.  Def. R. 56.1 Statement ¶ 33.

Mr. Hrynyk's claim that he "has refrained from naming medical expert [sic] until the summary judgment motion is decided" is unavailing.  Pl. Amended. R. 56.1 Statement ¶ 32.  Fact discovery is now closed. *See* Order, dated Sep. 7, 2005. No additional medical evidence to support Mr. Hrynyk's claims can be introduced.

> ### 2.      Summary Judgment on Plaintiff's Claims for Assault and Battery or False Arrest and False Imprisonment.

Defendants request summary judgment that plaintiff failed to file a notice of tort claim and has therefore waived his claims for assault and battery or false arrest and false imprisonment (collectively, the "Tort Claims").  The Court will grant Defendants' request.

Under N.J.S.A. § 59:8-9,

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

N.J.S.A. § 59:8-9. "The statute does not define what circumstances are to be considered 'extraordinary' and necessarily leaves it for a case-by-case determination . . . on the facts presented." *R.L. v. State-Operated Sch. Dist. of Newark*, 387 N.J. Super. 331, 340 (N.J. Super. App. Div. 2006) (quotations omitted), *quoting Ohlweiler v. Township of Chatham,* 290 N.J. Super. 399, 404 (N.J. Super. App. Div. 1996).

Mr. Hrynyk never filed a notice of claim under N.J.S.A. 59:8-9.  In fact, Mr. Hrynyk first requested leave to file such a notice in his August 7, 2006 Affidavit to this Court, well beyond the one-year limit set out in the statute. *See* Hrynyk Aff. ¶ 9.  Mr. Hrynyk's sole explanation for his failure to file such a notice within the time-frame set out under the statute appears to be that

he was not aware of the notice requirement. Pl. Opp'n Br. at 9.   "Case law makes it clear[, however,] that ignorance of the law or failure to seek legal advice will not excuse failure to meet the [notice of tort claim] filing deadline." *Hyman Zamft & Manard, L.L.C. v. Cornell*, 309 N.J. Super. 586, 593 (N.J. Super. Ct. App. Div. 1998).

The Court therefore finds that there is no genuine issue of material fact that Mr. Hrynyk waived any claim for assault, battery, false arrest or false imprisonment he may have had by his failing to file a notice of claim within the time-frame set out under N.J.S.A. 59:8-9.  The Court will grant Defendants' motion for summary judgment on this issue.

### 3.    Summary Judgment on Plaintiff's Claim of Deprivation of Civil Rights by Operation of a Municipal Practice, Policy or Custom.

Defendants argue that they are entitled to summary judgment that plaintiff has failed to establish a deprivation of his civil rights by operation of a municipal practice, policy or custom under 42 U.S.C. § 1983.  This Court agrees.

"A municipality may not be held liable under § 1983 for the constitutional torts of its employees by virtue of *respondeat superior*." *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 (3d Cir. 2006) (emphasis in original).   A municipality may, however, be held liable for the conduct of an individual officer when that conduct implements an official policy or custom. *See id.*, *citing Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978).

"A government policy or custom can be established in two ways. Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials [are] so permanent and

13

well-settled as to virtually constitute law." *Solomon v. Phila. Hous. Auth.*, 143 Fed. Appx. 447,

456 (3d Cir. 2005), *quoting Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

"When a municipality's failure to train its employees in a relevant respect evidences a

deliberate indifference to the rights of its inhabitants, such failure to train may itself constitute a

policy or custom that is actionable under § 1983." *Marable v. W. Pottsgrove Twp.*, 176 Fed.

Appx. 275, 283 (3d Cir. 2006) (quotations omitted), *quoting City of Canton, Ohio v. Harris*, 489

U.S. 378, 389 (1989). "However, when a single decision is the basis of the alleged constitutional

violation, a municipality generally may incur . . .  liability only where the decisionmaker is a

municipal policymaker." *Marable*, at 283 (quotations omitted), *citing Pembaur v. City of*

*Cincinnati*, 475 U.S. 469, 481-82 (1986).  "Likewise, a mere showing that a particular officer

violated policy, or that better training would have enabled the officer to avoid the injury-causing

conduct, is insufficient to establish a municipality's liability under § 1983 for failure to train.

*Marable*, at 283, *citing Simmons v. City of Phila.*, 947 F.2d 1042, 1060 (3d Cir. 1991).

The Court begins by noting that, since Plaintiff has failed to show that his constitutional

rights were infringed by the Officers' actions, Mr. Hrynyk's section 1983 claim against

Readigton Township and the Readington Police Department (collectively, "the Municipality") is

necessarily moot.  Even if Mr. Hrynyk's constitutional rights had been violated by the Officers'

conduct, however, he would not be entitled to put forth his claim of deprivation of civil rights by

operation of a municipal practice, policy or custom.

Indeed, the Readington Police Department had the following policy in effect at the time

of the incident:

> [W]hen a police officer encounters an intoxicated person who has
> not committed a crime, he may use such force, other than that

which is likely to inflict physical injury, as is reasonably necessary
to carry out his authorized responsibilities and to protect himself.
This may be interpreted as authorizing the use of temporary
restraints (handcuffs) if they are deemed necessary.  If the
intoxicated person, however, begins to put up a struggle that he is
likely to injury [sic] the officer, the person is committing an
assault which justifies the officer in using such reasonably
necessary force to subdue and secure the individual.  If such force
is excercised, the person should be considered under arrest for an
appropriate offense or in protective custody.

Def. Br. 21-22, *quoting* "Alcohol Treatment and Rehabilitation Act" Regulation.  In addition, the

Police Department Rules and Regulations stated that physical force was to be employed:

. . . when necessary to overcome a subject's physical resistance to
the exertion of the law enforcement officer's authority, or to
protect persons or property. . . . A law enforcement officer may use
physical force or mechanical force when the officer reasonably
believes it is immediately necessary at the time: (a) to overcome
resistance directed at the officer or others; or (b) to protect the
officer, or a third party, from unlawful force; or (c) to protect
property; or (d) to effect other lawful objectives, such as to make
an arrest.

Def. Br. at 22, *quoting* Readington Police Department Rules and Regulations..

Plaintiff acknowledges the existence of these guidelines, but argues that the Municipality

is nonetheless liable for any wrongdoing on the part of Officers Insabella and Greco because it

allegedly failed "to train its officer in the [Attorney General's] Use of Force Policy which was in

effect on the date of the incident, and for failing to train its officers how to [sic] properly deal

with intoxicated people in accordance with its own Alcoholism Treatment and Rehabilitation

Act."  Pl. Opp'n Br. at 11.

Even viewing all evidence in the light most favorable to plaintiffs, it is clear to the Court

that plaintiff has offered no evidence to show a deliberate failure on the part of the Municipality

to train employees evidencing a deliberate indifference to the rights of the Municipality's

inhabitants amounting to a policy or custom actionable under § 1983.  *See Marable*, 176 Fed.

Appx. at 283. The Court will therefore grant Defendants' motion for summary judgment on the

issue of the Municipality's § 1983 liability.

> **4.      Summary Judgment on Plaintiff's Claims for Violations of the New Jersey Constitution.**

Defendants claim they are entitled to summary judgment that plaintiff has failed to

establish any violation of his rights under the New Jersey Constitution.  This Court agrees.

Article 1, Section 7 of the New Jersey Constitution states: "[t]he right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated; and no warrant shall issue except upon probable cause, supported by oath

or affirmation, and particularly describing the place to be searched and the papers and things to

be seized."  N.J. CONST. ART. I, sec. 7.

First, this Court finds that the pat-down to which the Officers subjected Mr. Hrynyk did

not violate his rights under the New Jersey Constitution.  Noting that New Jersey courts closely

track the application of the Fourth Amendment in federal courts in applying the provisions of

Article 1, paragraph 7, the court in *State v. Otero* held that "New Jersey law unquestionably

permits police to "stop and frisk" an individual in the absence of probable cause to arrest."  *State

v. Otero*, 245 N.J. Super. 83, 91 (N.J. Super. App. Div. 1990), *citing State v. Lund*, 119 N.J. 35,

39 (N.J. 1990). "[T]he inquiry into the propriety of such conduct involves the question of

whether a reasonably prudent person would be warranted in the belief that his or her safety or

that of others was in danger." *Otero*, at 91 (quotations omitted), *quoting Lund*, at 39.  As

explained above, the Officers had reasonable grounds to believe Mr. Hrynyk may have been

armed and dangerous, given his allegedly intoxicated state and his claimed propensity to fire

weapons indiscriminately.  Under those circumstances, the pat-down was reasonable and did not

violate Mr. Hrynyk's rights under the New Jersey Constitution.

Second, the Court finds that the entry upon the lawn in front of Mr. Hrynyk's trailer did

not violate his constitutional rights under the New Jersey Constitution because the officers

entered the property with the consent of Mr. Hrynyk's parents.  "When preceded by valid

consent, a warrantless search of property is permissible under the Fourth Amendment to the

United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution."  *State v.

Suazo*, 133 N.J. 315, 319 (N.J. 1993), *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 219

(1973). "Consent must  be voluntary and the consenting party must understand his or her right to

refuse."  *Suazo*, at 319-20. The New Jersey Supreme Court has "acknowledged that valid

consent may be obtained from one other than the accused."  *Id.*, at 320, *citing State v. Coyle*, 119

N.J. 194, 215 (1990). Indeed, "[a] third party who possesses common authority over or other

sufficient relationship to the property sought to be inspected may [thus] consent to its search."

*Suazo*, at 320 (quotations omitted), *quoting United States v. Matlock*, 415 U.S. 164, 171 (1974).

"That authority to consent arises from the mutual use of the property by persons generally

having joint access or control for most purposes."  *Suazo*, at 320 (quotations omitted).  Since Mr.

Hrynyk's parents led the Officers to Mr. Hrynyk's trailer, located on the parents' property, the

Officers' entry upon Mr. Hrynyk's "front lawn" did not violate his rights under the New Jersey

Constitution.

Finally, the Court finds that the arrest did not violate Mr. Hrynyk's rights under the New

Jersey Constitution.  Mr. Hrynyk pled guilty to committing the crime of obstruction of justice in

the presence of officers Insabella and Greco.  As discussed above, the fact that his actions in hte

presence of the officers amounted to a crime is now res judicata under *Hennessey v. Winslow Twp.*, 183 N.J. 593, 599 (N.J. 2005).  Mr. Hrynyk therefore cannot argue that his arrest for the commission of that crime was improper.

The Court thus finds that there is no genuine issue of material fact that Mr. Hrynyk's rights under the New Jersey Constitution were violated by the Officers' conduct.   The Court will therefore grant Defendants' motion for summary judgment on the issue.

     **5.**     **Summary Judgment on All Claims Against Defendants on the Basis of Defendants' Qualified Immunity.**

Defendants argue that they are entitled to summary judgment that the doctrine of "qualified immunity" shields Officers Insabella and Greco from liability, requiring dismissal of all claims against them.  This Court agrees.

"Qualified immunity shields state officials from suit when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Yarris v. County of Delaware*, No. 05-1319, 2006 U.S. App. LEXIS 24735, at *29 (3d Cir. Oct. 2, 2006) (quotations omitted), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In deciding whether an officer is entitled to qualified immunity, [the Court] must first determine whether the officer's alleged conduct violated a constitutional right." *Chavez v. Martinez*, 538 U.S. 760, 766 (2003), *citing Katz*, 533 U.S. at 201. "If not, the officer is entitled to qualified immunity, and we need not consider whether the asserted right was clearly established." *Chavez*, at 766.

This Court finds that even viewing all evidence in the light most favorable to the non-movant, plaintiff has failed to prove that there was a genuine issue of material fact that his

18

constitutional rights had been violated by the Officers' actions.  This Court need not therefore address the issue of whether the Officers are shielded by qualified immunity.

**III.    CONCLUSION**

      For the foregoing reasons, this Court grants Defendants' Motion for Summary Judgment. An appropriate form of Order accompanies this Memorandum.


      Date: December 12, 2006.


                                  ___ s/ Garrett E. Brown, Jr._____
                                  GARRETT E. BROWN, JR., U.S.D.J.